**JOHN DUGUID & SONS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 9617.**

United States District Court
N. D. New York.

Oct. 16, 1967.

E. Michael DiFabio, Albany, N. Y., for plaintiff.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., Mitchell Rogovin, Asst. Atty. Gen., Daniel J. Dinan, David A. Wilson, Jr., Edward J. Snyder, Attorneys, Department of Justice, Washington, D. C., for defendant.

Memorandum-Decision and Order

JAMES T. FOLEY, Chief Judge.

This action is to recover $1,129.31 of federal income taxes for the calendar year 1958, with interest and statutory interest. This odd and relatively small amount demanded results from the auditing of the federal income tax returns of the plaintiff corporation for the calendar years 1958 and 1959 by the Internal Revenue Service. After the audit, deductions were disallowed for substantial pension plan contributions in those two years. Such determination affected a claimed loss reported in the 1959 return, increased the 1958 taxable income, and instead of a full refund of the 1958 taxes the plaintiff was allowed only a partial refund. The mathematical details, differences and adjustments to reach the exact amount involved are unnecessary to pursue. The remaining sole and basic issue for decision in the action now, and the parties have so stipulated, is whether the plaintiff-taxpayer's employees' pension plan, formally adopted by its Board of Directors on May 9, 1958, entitled: "The John Duguid & Sons Pension Trust", is discriminatory in its coverage, contributions or benefits, so that deductions could not be taken legally for undisputed payments to the plan in 1958 of $6,933.82 and in 1959 of $6,833.82.

The action was tried to the court and the material and important facts have been agreed upon in filed written stipulations. Two witnesses testified, both being called by the plaintiff: George C. Duguid, President and Office Manager of the plaintiff company, and Internal Revenue Service Officer John J. Ryan, in charge of the local department of the Service with the duty to determine qual-

ification of deferred compensation plans. Ryan made the examination of the books and records of the plaintiff corporation and the initial determination that the pension plan of the plaintiff under the circumstances did not meet the requirements of law necessary to qualify for approval. This determination was upheld by the District Director, and after due protest and consideration was upheld by the Appellate Division of the Service. Although the amount of money involved is not great, at least the plaintiff's view is that decision of the narrow issue presented under the prevailing and admitted facts has important consequences for the building trade industry with its peculiar employment arrangements in the creation of these pension plans for its employees.

The Statute involved for interpretation and application to the facts here is Section 401, Internal Revenue Code of 1954 (26 U.S.C.1958 ed., sec. 401). The pertinent portions of the Section particularly applicable and to be discussed are set forth below.[1] The task to determine whether a particular pension plan or trust qualifies, despite the seeming plainness of the statutory language, is difficult. A responsible and experienced spokesman for the government in these problems characterizes the finding and determina-tion to lie in a subjective opinion area in which reasonable men may reasonably differ. (Three Speeches, Isidore Goodman, Chief of the Pension Trust Branch, IRS, collected in Pension Plan Guide, Vol. 3, 26,000 et seq., published by Commerce Clearing House.) All problems subject to opinion diagnosis are inclined to arouse strong disagreement in close, borderline situations and this is the attitude here of the plaintiff, earnestly and competently pressed by its attorney. However, our administrative and judicial conclusions and decisions necessarily depend upon opinion evaluation of facts in many instances. Slide-rule and formula determinations are not always available.

A brief discussion of the plaintiff's business activities, employment practices, and certain important provisions of the pension plan is in order. The Duguid Corporation was formed in 1958 and is engaged in the General Construction business. Primarily, it builds schools, churches, industrial buildings and small office buildings. George Duguid is President, his brother, Albert Duguid Vice President and Field Superintendent, and H. W. Sampson, Jr. Supervisor. The Duguid brothers own the stock of the company. As testified at the trial, George does the so-called "take-off", i. e., estimating the job bids to be made;

---

1. Sec. 401. *Qualified pension, profit-sharing and stock bonus plans.* (a) Requirements for qualification:—A trust created or organized in the United States and forming part of a stock bonus, pension or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

 * * * * *

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

 * * * * *

or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

(5) A classification shall not be considered discriminatory within the meaning of paragraph (3) (B) or (4) merely because it excludes employees the whole of whose remuneration constitutes "wages" under section 3121(a) (1) (relating to the Federal Insurance Contributions Act) or merely because it is limited to salaried or clerical employees. * * *

Albert does mainly field supervision, and Mr. Sampson assists him, and all three deal with sub-contractors in the various building projects. These duties,—and there is no dispute in that respect,—are executive and managerial. The two officer-shareholders were paid salaries of $10,000.00 in 1958 and $13,000.00 in 1959. Sampson was paid $6,634.00 in 1958 and $8,800.88 in 1959. The other employees were hourly paid, being the usual craftsmen and laborers who performed the actual construction work. In the years in issue, 1958 and 1959, there were about thirty to forty such employees, and as is customary, their employment was controlled and governed by collective bargaining agreements with different local unions. These employees would be mainly transient in their contact with the plaintiff, being hired when needed for the particular building project through the Business Agent and contact with the Union Hall. However,—and it seems a custom and practice in this type construction business,—the plaintiff company had six employees who worked quite steadily for it, their salary range in the years in question ranging from about $2500.00 to $7000.00 per year. Under the company pension plan employees eligible were defined to include "any person regularly employed by the employer in an executive, administrative or clerical capacity on a salaried basis, excluding such person whose customary employment is for not more than twenty hours in any one week, or for not more than five months in any calendar year." The rub comes engendering this dispute because under the wording only the three salaried employees would be covered, and the six steady workers were excluded, although they did work more than twenty hours in any one week, and more than five months in any calendar year. The Internal Revenue Service position has been that the plan would qualify if its terms allowed the six to be eligible. The Service unequivocally concedes there would be no necessity to include the large, casual work force in order to meet the requirements for qualification.

The position of the plaintiff is interesting in one of its aspects of disagreement with the government. It is in regard to the federal labor laws and the complications that could arise with the different unions if a select few were allowed to be eligible and others were not. The spectre of demand for further collective bargaining agreements, claims of alleged violations by different unions, and possible demand for negotiation and change in pension rights, from my experience, are not groundless. However, there is nothing in this record to prove such apprehension had a basis in fact in this situation to justify the wording of the plan that in effect excluded all the trade union personnel from coverage. It is agreed—and I so find—that at the time the plan was formulated there was no contribution by the plaintiff to union pension funds, but only to union welfare funds that did not provide the benefits of deferred compensation. It should be noted that at no time is there any reflection upon the plaintiff and its officers as acting otherwise in the adoption of the Pension Trust in the manner it saw fit honorably and in good faith. Further, Internal Revenue Agent Ryan testified he did not believe the plaintiff adopted the pension plan as a device to siphon off corporation profits. (See Greenwald v. Commissioner of Internal Revenue, 2 Cir., 366 F.2d 538).

Despite these favorable impressions for the cause of the plaintiff, I cannot escape the compelling and clear language in the statute and Treasury Regulations (26 C.F.R. Sections 1401–1, 3, 4) that direct the Secretary and his delegate in the determination for qualifying a pension plan to find the classification of employees in the plan not to be discriminatory. Such discrimination is spelled out by the phrase that the plan shall not favor employees who are officers, shareholders, persons whose principal duties consist in supervising the work

of other employees, or highly compensated employees. In my judgment, the decision of the Director challenged that there was such discrimination is supported logically as well as legally by the admitted factual situation. The make-up of the Statute obviously entrusts the analysis fundamentally to the expertise of the Service. Plain, obvious and rational meaning of a Statute is always preferred to any curious, narrow, hidden sense. (Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 69 L.Ed. 660; Old Colony R. R. Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484). The words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses. (Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301).

In my judgment, these factors of type employment duties and amount of compensation are independent, isolated ones that can, from my reading of the legislative grant alone, warrant a determination unfavorable to qualification if there is rational basis and support in the background facts for finding of discrimination. The hard, cold facts involved here are undisputed, and I so find them, that the three employees covered by the plan were the two owners and managers of the Company and its one Supervisor. It is true, as the government concedes, that by the statute and regulations a plan may cover salaried employees only, and there is no requirement to cover the entire labor force, but in this setting there is sufficient, I think, to base adverse decision upon the portion of the statute that bars approval if the plan favors officers, shareholders and persons whose principal duties consist in supervising the work of other employees, or are highly compensated employees. It may be that it would be difficult in today's economy to categorize the Duguids and Sampson as highly compensated, but the officer, stockholder and supervisory qualities of their work are evident. The Committee report on the legislation states explicitly an employer may confine a plan to clerical or salaried employees but it also sets forth the important proviso again that such limitation is all right if the effect of the plan is not to discriminate in favor of highly compensated employees, or officers, shareholders, or persons whose principal duties consist in supervising the work of other employees. (H.R. 2333, 77th Cong., 1st Sess.1942—2 C.B. 372, 450). The plaintiff finds fault with the Agent's so-called "fair cross section" test of employees covered arguing it is not prescribed or authorized by the statute and regulations. I would think that some rule of thumb, common sense guide and standard must necessarily evolve on the administrative level to effectuate the statutory purposes. I find also that the elaborate schedule comparison submitted by the government in relation to 1958 and 1959 Pension Plan Benefits and Benefits under Social Security Act show substantially less benefits for members of the steady work force and larger percentage benefits for the three management employees covered by the plan as well as Social Security.

In my reading of them there are significant differences in the main two cases the plaintiff relies upon to compare with the situation here. The cases arose under a predecessor statute. In Ryan School Retirement Trust (1955), 24 T.C. 127, there were 115 employees and five officers eligible to participate. In Volckening, Inc. (1949), 13 T.C. 723, all employees then employed for two years when the plan was adopted, and future employees upon completion of two years, were eligible to participate. A recent case, Pepsi-Cola Niagara Bottling Corp. v. Commissioner, 48 T.C. 75, filed April 26, 1967, the plaintiff urges vigorously in a substantial supplemental brief is on all fours with this case and should be controlling. Again, I think there are significant differences in the factual background. One particularly noted in that Tax Court decision is that two employees under the plan could not be classified as employees whose principal

**106**

duties consisted in supervising the work of other employees. Factors of this kind are not present in this situation. These important differences I think protect the administrative determination from a charge of being unreasonable, arbitrary, made with abuse of discretionary power conferred by law and in violation of the law.

 Discrimination is unlawful when a distinction is made without sound basis and to one's detriment. (NLRB v. Local 50, etc., 2 Cir., 339 F.2d 324.) Administrative Agencies and Boards are accorded wide latitude in interpretations when legislative enactment clearly bestows discretionary power of determination. (Bent v. Commissioner of Internal Revenue, 9 Cir., 56 F.2d 99, 103; Brown v. Helvering, Commissioner, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725). There is a heavy burden to upset decisions of the kind that is basically challenged by this litigation. (Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991; Morris Plan Industrial Bank of New York v. Commissioner of Internal Revenue, 151 F.2d 976, 983; Long Island Drug Co., Inc. v. Commissioner of Internal Revenue, 2 Cir., 111 F.2d 593, cert. den. 311 U.S. 680, 61 S.Ct. 49, 85 L.Ed. 438; Wilmark Service System, Inc. v. Commissioner of Internal Revenue, 2 Cir., 368 F.2d 359, 361). Law searches out the reality and is not concerned with the form. (Lehman v. Commissioner of Internal Revenue, 2 Cir., 109 F.2d 99, 100).

My findings of facts are stated above and the agreed facts stipulated upon are adopted also and incorporated herein by reference. My conclusion is the determination of the Director questioned is not proven to have been rendered in violation of law, the deductions were properly disallowed, and the plaintiff is not entitled to recover. The complaint is dismissed, and judgment to such effect shall enter in favor of the defendant. (See Matteson v. United States, 2 Cir., 240 F.2d 517).

It is so ordered.