**UNITED STATES of America,**
**Appellant,**

v.

**George Howard HALL and Ruth Hall,**
**Appellees.**

**No. 18951.**

United States Court of Appeals
Eighth Circuit.

July 12, 1968.

Stuart A. Smith, Atty., Tax Division, Dept. of Justice, Washington, D. C., for appellant; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., and John O. Garaas, U. S. Atty. Fargo, N. D., on the brief.

Philip Vogel, Fargo, N. D., for appellees; Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., on the brief.

Before MATTHES, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The Fargo Medical Clinic, a co-partnership of thirty-three doctors, established a pension plan for its 165 employees on January 1, 1963.[1] The plan was of the unit benefit type and provided for the vesting of retirement benefits after fifteen years of service and the attainment of age fifty. The plan was approved by the Internal Revenue Service on July 5, 1963.

On October 1, 1963, the Clinic established a pension plan for the partners. It was of the money-purchase variety and provided for immediate vesting.

In 1964, the taxpayer—one of the partners[2]—contributed $2,500 to the partners' pension plan and claimed a deduction of $1,250 on his 1964 federal income tax return.

In December of 1965, the Commissioner ruled that the partnership plan, when considered with the employee plan, was discriminatory because it provided more liberal vesting provisions for the partners[3] and disallowed the deduction.[4]

The taxpayer paid the resulting assessment of $512.50 and filed a claim for a refund. He subsequently instituted this action. The United States District Court for the District of North Dakota held that the partnership plan was not discriminatory and that the taxpayer was entitled to a judgment in the amount of the assessment, plus interest.

The first question is whether a pension plan is discriminatory solely because it provides for immediate vesting for partners and deferred vesting (age fifty and fifteen years of service) for

1. The partnership practices in a building owned by a corporation in turn owned by the partners. The corporation established an identical plan for its employees. This plan will not be separately discussed.

2. Mrs. Hall is a party to this action only because she filed a joint return with her husband. We will refer only to Doctor Hall in this opinion.

3. The statute provides that the plan shall not discriminate in favor of "employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees." See footnote 6 infra. There is no question in this case that the partners are within the prohibited group.

4. If the plant is a "qualified pension plan," a deduction is allowed to each partner for his contribution to the retirement plan to the statutory maximum. 26 U.S. C. § 404(e) (1964 ed.).

other employees.[5] We answer this question in the negative.

The government's position that inequality in vesting, in and of itself, renders a plan discriminatory is posited on its interpretation of § 401 of the Internal Revenue Code of 1954,[6] Treasury Regulations[7] and rulings of the Commissioner.[8]

The parties state that the question is one of first impression in the courts.

■ We have reviewed the regulations and rulings and find that the regulations do not deal with this question and that the rulings, with one exception, are generally concerned with situations where all employees are covered by the same or identical unit benefit plans but the vesting provisions operate to effectively preclude all but a favored group from becoming eligible for pension benefits. Under such circumstances, it is obvious that discrimination results.[9]

A 1965 ruling, however, dealt with a fact situation similar to the one here, except that employee benefits did not vest until death or termination of the plan.

"[1] The employer is a partnership, without any 'owner-employees,' which has a number of common-law employees. The partnership established a unit benefit pension plan for its common-law employees and a money purchase pension plan for the partners. * * *

"[2] The employees' plan is noncontributory and provides that all employees, age 30 or more, with 1 year of service, who have commenced employment prior to age 55, are eligible to participate in the plan. The plan provides retirement benefits of 1 percent of the first $4,800 of annual salary averaged over the last 10 years of service plus 1⅔ percent of such

---

5. If several trusts are created and intended to qualify under the Code, such trusts will be considered as one in determining whether prohibited discrimination exists. Trea.Reg. § 1.401-3(f); H.Rep.No. 2333, 77 Cong. 1 Sess., p. 105 (1942-2 Cum. Bull. 372-451).

6. "§ 401. *Qualified pension,* * * * *plans*
   "(a) *Requirements for qualification.* —A trust * * * forming part of a * * * pension * * * plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—
   * * * * *
   "(3) if the trust, or two or more trusts, * * * constituting * * * a plan * * * benefits either—
   "(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan,
   "(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

"and
   "(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees."

7. Trea.Reg. §§ 1.401-1(b) (3), 1.401-11 (d)(1).

8. P.S. 22, September 2, 1944 (C.C.H. Pension Plan Guide, par. 12,622); Mim. 6136, 1947-1 Cum.Bull. 58, 62 (Part 6 (d)); Rev.Rul. 33, 1953-1 Cum.Bull. 267, 277, 280-281 (Parts 4(f), 5(b) (1)); Rev.Rul. 57-163, 1957-1 Cum.Bull. 128, 142, 146 (Parts 4(h), 5(b) (1)), Rev. Rul. 61-157, 1961-1 Cum.Bull. 67, 83, 87 (Parts 4(i), 5(c)); Rev.Rul. 6-178, 1965-2 Cum.Bull. 94, 114-115, 120 (Parts 4(i), 5(c)).

9. Similarly, the tax commentary cited by the government is inapplicable as it deals with the same situation: 1967 C.C.H. Pension Plan Guide, par. 2,368; 1967 Prentice-Hall Pension and Profit Sharing Service, par. 4171; Gordon, Discrimination Problems in the Drafting and in the Operation of Pension and Profit-Sharing Plans. 14 N.Y.U. Institute on Federal Taxation, 1153, 1170 (1956); Dederick, What Constitutes Discrimination in Pensions and Profit Sharing Plans? 22 J. Taxation 272, 273 (1965).

salary in excess of $4,800 times years of service not to exceed 30 years.[10] The employees' plan further provides that benefits do not vest prior to retirement except upon death or plan termination.

"[3] The partners' plan provides for the same eligibility requirements as the employees' plan. Five percent of the employer's annual earned income is contributed to the partners' plan, to be allocated to each partner's account in the proportion each partner's share of earned income bears to the total earned income. The benefits are based on all funds accumulated in each partner's separate account. Vesting is immediate and full.

\* \* \* \* \* \*

"[4] Because the employees' plan is of the unit benefit type, while the partners' plan is of the money purchase type, it is difficult to compare the benefits provided under each plan. Usually, in cases of this type, if it can be satisfactorily demonstrated that the contributions under the money purchase plan, on the basis of factors applicable to the unit benefit plan, do not result in the prohibited discrimination, the benefits under each plan may be accepted as similar. However, one of the factors to be considered in arriving at such a conclusion is that of vesting.

"[5] Plan benefits cannot be compared unless there is some provision insuring that these benefits are made available to eligible participants under the same conditions. \* \* \* [T]he difference between the immediate full vesting provided for partners under the instant partners' plan and the lack of such vesting provisions under the employees' plan constitutes discrimination of the type prohibited by section 401(a) (4) of the Code. This is so in this situation because under no circumstances will a participant in the partners' plan forfeit any of his benefits while a common-law employee may very well forfeit his benefits.

\* \* \* \* \* \*

"[6] Accordingly, it is held that where a partnership has two pension plans, one of the unit benefit type for common-law employees, the other of the money purchase type for partners, none of whom are 'owner-employees,' and where the benefits under the employees' plan do not vest prior to retirement, except upon death or termination of the plan, but the benefits under the partners' plan are fully vested immediately, then the disparity in the vesting provisions will cause the partners' plan to fail to qualify because of the prohibited discrimination within the meaning of section 401(a) (4) of the Code. The fact that a partner may be taxed on a portion of the employer's contribution, which under section 404(a) (10) of the Code is not allowable as a deduction, is to be disregarded in determining whether the plan's vesting provisions are discriminatory."

Rev.Rul. 65–266, 1965–2 Cum.Bull. 138.

---

10. The benefit formula in the Fargo Clinic plan provides:

"\* \* \* The amount of the monthly payment shall be an amount equal to the participant's past service benefit, if any, plus the participant's future service benefit as computed in paragraphs (a) and (b) of this Section 6.1.

"(a) The past service benefit shall be an amount equal to $\frac{3}{4}\%$ of the participant's monthly compensation as of the date he becomes a participant, multiplied by the number of full years of continuous full-time employment beginning either on the date on which he attained the age of 30 years, or on the date upon which he first completed two (2) years of continuous full-time employment, whichever date occurred later and ending upon the date he becomes a participant.

"(b) The future service benefit shall be an amount equal to $\frac{3}{4}\%$ of the first $400.00 of the participant's monthly compensation, plus $1\frac{1}{2}\%$ of the participant's monthly compensation in excess of $400.00 all as of the date he becomes a participant and for each year thereafter until his normal retirement date."

This ruling is entitled to weight in the interpretive process, K. Davis, Administrative Law Treatise, § 5.01. Cf., Volkswagenwerk Aktiengesellschaft v. FMC, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968) (preliminary print); Whittemore v. United States, 383 F.2d 824, 830 n. 9 (8th Cir. 1967). But cf., Biddle v. Commissioner of Internal Revenue, 302 U.S. 573, 58 S.Ct. 379, 82 L.Ed. 431 (1938) ("[R]ulings * * * are of little aid in interpreting a tax statute."), but as it was neither contemporaneous nor of long standing, its value is limited, K. Davis, supra at § 5.06; Griswold, A Summary of the Regulations Problem, 54 Harv.L.Rev. 398, 404–11 (1940), and it cannot be given the force of law as a result of a reenactment after its issuance. See generally, Brown, Regulations, Reenactment and the Revenue Acts, 54 Harv.L. Rev. 377 (1940), Griswold, supra at 398–404. It is further weakened by the cautionary statement in the Treasury Department's Cumulative Bulletins:

> "Revenue Rulings and Revenue Procedures reported in the Bulletin do not have the force and effect of Treasury Department Regulations (including Treasury Decisions), but are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose. * * *"

While it is unnecessary for us to determine the validity of the ruling as applied to a situation in which employee benefits do not vest until retirement, we do not believe that the Code permits its application to every situation in which there are inequalities in vesting.

It is evident from paragraph [4] of the ruling that the Commissioner is of the view that differences in benefits, other than vesting, do not necessarily make a plan discriminatory if there is no discrimination in contributions.

Vesting is an important benefit in any pension plan and is one which must be considered in reaching a decision as to whether a plan is discriminatory as to benefits. We are unable, however, to find support in the language of the statute or its legislative history to support the Commissioner's view that differences in some benefits are permissible but any inequalities in vesting (a benefit) are discriminatory.

No compelling reasons have been called to our attention for treating vesting as a benefit to be singled out for the unique treatment advocated by the Commissioner. Indeed, recent studies and legislative recommendations indicate that vesting is a highly desirable objective but one which must be considered in the light of other meritorious ones.

President Kennedy appointed a Cabinet Committee, in 1962, to review pension plan growth and to make recommendations for federal control. This Committee reported on January 29, 1965.[11] It gave serious attention to the

---

11. President's Comm. on Corporate Pension Funds and other Private Retirement and Welfare Programs, Public Policy and Private Pension Programs—Report to the President on Private Employee Retirement Plans xiv (Jan. 29, 1965) (hereinafter cited as Cabinet Comm. Report); U. S. News & World Report, June 17, 1963, p. 106. See also, Lurie Summary of Position Papers on "Tax Inequity" Proposals of President's Cabinet Committee on Private Pension Programs, 2 Tax Lawyer 547 (1968); The Report of the President's Cabinet Committee on Private Pension Plan Regulation: An Appraisal, 63 Mich.L.Rev. 258 (1964), comments:

" * * * [T]he Committee considered vesting to be of such importance that it did not want the decision of inclusion or exclusion of vesting provisions to be made by private parties, and consequently it proposed that inclusion of a minimum vesting provision be a qualification for favorable tax treatment.

* * * * *

"Two primary reasons are advanced for establishing vesting provisions. One is based on what may be characterized as the union concept of the function and nature of pensions. Unions assert that employees earn the right to pensions as they work because they are working for a lower straight hourly wage in or-

problem of vesting and recommended fifty per cent vesting after fifteen years of employment and full vesting after twenty years. This recommendation was rejected by a Presidential Advisory Committee who stated it would be unwise to require any minimum standards of vesting.

While efforts are currently being made in Congress to establish minimum standards of vesting before any plan can be approved, no legislation to this end has been enacted.[12] The Labor and Treasury Departments have agreed on a bill sponsored by Senator Ralph W. Yarborough (D-Texas) (S. 3421) and Representative Carl D. Perkins (D-Kentucky) (H.R. 17046) which would require vesting at age twenty-five after ten years of service. No legislation has been proposed requiring immediate vesting. The most liberal proposal being that of the AFL-CIO who have recommended mandatory vesting after ten years of service. 67 LRR 327.

If absolute equality of vesting is required in pension plans established for partners and their employees, it seems probable that money purchase plans providing for immediate vesting will be the result. While it is argued that this would be a desirable development, arguments to the contrary are also advanced. Those who oppose a policy of requiring immediate vesting take the position that such policy would mean lower benefits, particularly for those approaching retirement, reduced coverage and fewer new plans.

We recognize that neither of the Presidential Committees nor the Congress considered the question presented to this Court, but it is clear that all recognized that early vesting is a highly important

der receive pension benefits. Therefore, employees should have vested rights in what they have earned. A second reason * * * is that pension plans without vesting provisions tend to impair labor mobility by tying the worker to the job in which he has pension credits he would lose if he leaves. On the other hand, management representatives attribute the existence of a pension plan to different purposes. As the Committee itself pointed out, 'private retirement plans had their origins in retaining valuable employees, in reducing labor turnover and its attendant costs, and in rewarding long service.' These business purposes behind the creation of pension plans are still viable today.
"Both * * * positions have merit, and it seems infeasible to resolve the propriety of a minimum vesting requirement by weighing the relative, strengths of these two diverse concepts. However, when the probable practical effect of a vesting requirement is examined it is doubtful that the proposal would be either a wise or effective law. In some industrial situations, primarily in the so-called depressed industries, the additional cost to plans resulting from a vesting requisite for qualification would mean lower benefits or reduced coverage. In addition, increased costs of a vesting provision might well discourage the establishment of new plans. For these rea-

sons, the President's Advisory Committee on Labor-Management Policy, after reviewing a preliminary report by the Cabinet Committee, concluded that while supporting 'the general principle of vesting in private pension plans * * * it would be unwise to require some minimum [sic] standard of vesting for tax approval.'" (Footnotes omitted.)

12. Senator Jacob Javits of New York has introduced a bill (S. 1103) requiring full vesting at age forty-five after fifteen years of service. At the introduction, he stated: "More and more vesting arrangements are being insisted on * * *," and added that even with the trend, only one out of every four employees covered by a pension plan ever will receive benefits from it because of lack of vesting. 67 LRR 299.
On the other hand, a study made by H. B. Lumb with the National Association of Manufacturers says that " * * * [P]roposed federal standards for pension vesting, funding, and reinsurance would reduce flexibility and increase costs so much that employer contributors to private pension funds could be forced to limit past-service credits."
The AFL-CIO has recommended that all pension plans be required by law to vest benefits in the individual employees within a period of ten years. 67 LRR 327.

and desirable objective but one to be balanced against others of merit.

■ We do not find support for the Commissioner's view in the legislative history of § 401. That section was adopted in 1942 to (1) prevent pension plans from being used as a method of tax avoidance by deferring income for highly compensated employees and (2) prevent pension plans from being used to provide retirement benefits for highly paid employees only rather than for employes generally. Tavannes Watch Co. v. Commissioner of Internal Rev., 176 F.2d 211 (2d Cir. 1949); Gordon, Discrimination Problems in the Drafting and in the Operation of Pension and Profit-Sharing Plans, 14 N.Y.U. Institute on Federal Taxation, 1153, 1170 (1956). Cf., Pepsi-Cola Niagara Bottling Corp., 48 T.C. 75 (1967). Insistence on identical vesting provisions will not, in our view, necessarily accomplish either objective.

■ In the light of the language of the statute [13] and absent a clear Congressional intent, we reject the government's position that any difference in vesting between partners and employees is neces-

13. The taxpayer sought to support his position by referring to subsections (c) and (d) of § 401. Subsection (c) defines an "owner-employee" "in the case of a partnership [as] a partner who owns more than 10 percent of either the capital interest or the profit interest in such partnership." It is agreed that no partner in the Fargo Medical Clinic is an "owner-employee" within this definition. Subsection (d) provides:

"(d) *Additional requirements for qualification of trusts and plans benefiting owner-employees.*—A trust forming part of a pension or profit-sharing plan which provides contributions or benefits for employees some or all of whom are owner-employees shall constitute a qualified trust under this section only if, in addition to meeting the requirements of subsection (a), the following requirements of this subsection are met by the trust and by the plan of which such trust is a part:

"(2) Under the plan—

"(A) the employees' rights to or derived from the contributions under the plan are nonforfeitable at the time the contributions are paid to or under the plan; * * *."

Based on these subsections, the taxpayer argues that since Congress has specifically provided for vesting of employee benefits only in the case of "owner-employees" it follows that, as in this case, where there are no "owner-employees" the employees' benefits need not be vested. We reject this argument.

The legislative history of this provision illustrates the situation that prompted this provision:

"In the case of owner-employees with employees, contributions for employees with more than 3 years' service must be nonforfeitable at the time they are made under a plan. This requirement is made a condition governing the qual-

ification of a plan covering such owner-employees, and unless a provision for vesting is included in the terms of the plan a contribution for owner-employees would not be allowable nor would it be deductible. Your committee believes that because an owner-employee always has a vested right to contributions he makes to a retirement plan for his own benefit, it is only fair and equitable that he provide similar vested rights for his employees."

S.Rep.No. 992, 87th Cong., 1st Sess., p. 15 (1962-3 Cum.Bull. 303, 317), U.S. Code Cong. & Admin.News 1962, p. 2978.

Congress was concerned with the situation where both "owner-employees" and common-law employees were covered by a single or identical trusts which purported to be non-vesting on their face. Congress realized that although the "owner-employee" benefits were ostensibly non-vested, in effect, they were vested since any forfeiture inures to the benefit of the equity owners of the employer.

The plan before this Court presents a different situation. The type of benefit provided for the partners and their common law employees is entirely dissimilar. Most importantly, the partners' benefit is not on its face a non-vested benefit. Thus, we reject the inference the taxpayer would have us draw. While only if a partner owns ten per cent of the equity will the partners' non-vested benefit be deemed to be vested, thus requiring the employees' benefit to be vested; it does not follow that if no partner owns ten per cent of the equity, the partners' interest may be expressly a vested interest without requiring the employees' interest to be vested. However, as we hold this is not to say that the converse is necessarily true when applied to the facts of the case before this Court.

sarily discriminatory. Nonetheless, inequalities in vesting are discriminatory (even if contributions are comparable) if they operate, alone or with eligibility requirements, to effectively exclude so many employees from the practical benefits of the plan that its value to the employee group as a whole is illusory.

We realize the difficulty of applying this test, but in the absence of a carefully drawn regulation, the courts have no alternative but to adopt a standard and apply it to the best of their ability on a case-to-case basis.

■ We also make clear that inequalities in vesting are discriminatory if the other benefits in the plan are similar. Our holding is not intended to modify the rulings of the Commissioner that vesting provisions, even though identical, that operate to effectively exclude all but the prohibited group from the benefits of the plan are discriminatory. P.S. 22, Rev.Rule. 57–163, 1957–1 Cum.Bull. 128, 139, 142, 145, 146. See generally, Greenwald v. C. I. R., 366 F.2d 538 (2d Cir. 1966); John Duguid & Sons, Inc. v. United States, D.C., 278 F.Supp. 101 (1967); *Pepsi-Cola Niagara Bottling Corp.*, supra.

■■ This brings us to the question as to whether the Fargo Clinic plan is discriminatory. This determination, like that of what is reasonable under 1954 Int.Rev.Code § 167, is one for the trier of fact. See, Standard Asbestos Mfg. & Insulating Co. v. C. I. R., 276 F.2d 289 (8th Cir.), cert. denied 364 U.S. 826, 81 S.Ct. 63, 5 L.Ed.2d 54 (1960); Twin City Tile & M. Co. v. Commissioner of Internal Rev., 32 F.2d 229 (8th Cir. 1929). The burden of proving that the plan is nondiscriminatory is on the taxpayer. Perlmutter v. C. I. R., 373 F.2d 45 (10th Cir. 1967).

No evidence as to the discriminatory nature of the plan was presented by the Commissioner. He took the position that the law required that the vesting provisions be identical and they were not. "Both [should] have vested rights or both [should] have unvested rights, * * *."

The taxpayer offered evidence: (1) that the eligibility requirements were identical, (2) that current contributions to the employees' plan (7¾ per cent of payroll) were a greater per cent of payroll than contributions to the partners' plan (6½ per cent of payroll),[14] (3) that the Clinic Manager (salary $26,000 per year) was satisfied with the employee plan and believed other employees to be "elated" with, and not critical of it, (4) that the employee plan was designed, when integrated with Social Security benefits, to insure that retiring employees would receive a retirement benefit of from fifty per cent to sixty-five per cent of their "wage," (5) that the past service liability for employees was being funded over an undisclosed period of years—perhaps eight or nine, (6) that the employee plan compared favorably with those of other clinics, (7) that while employees were permitted to contribute, none of them had seen fit to do so, (8) that the annual turnover among employees under thirty years of age was approximately forty per cent, and for employees over thirty years of age was four per cent, (9) that forty-eight employees were covered by the employee plan in 1965, (10) that if the employee plan were amended to provide full and immediate vesting, the long term cost to the employer would be increased by twen-

14. Section 401(a) (5) provides:
"* * * [A] plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of or on behalf of the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of such employees, or merely because the contributions or benefits based on that part of an employee's remuneration which is excluded from 'wages' by section 3121(a) (1) differ from the contributions or benefits based on employee's remuneration not so excluded, or differ because of any retirement benefits created under State or Federal law. * * * *"

ty to twenty-five per cent above current levels, and (11) that an actuary was of the opinion that the plan was sound and not discriminatory because long service employees would receive larger pension benefits under the benefit formula of the employees' plan than under the formula of the partners' plan.

No testimony was introduced from which the trial court could determine the number of employees who could reasonably be expected to meet the combined eligibility and vesting requirements and thus qualify for retirement benefits.

The trial court found:

"The plaintiffs offered the testimony of a Consulting Actuary, a Certified Public Accountant, and the Manager of the Fargo Clinic, that the two pension plans do not discriminate against the employees of Fargo Clinic, a co-partnership and Fargo Clinic, Inc., a corporation. Their uncontradicted testimony was to the effect that the two plans favor the employees rather than the physician partners. The defendant offered no testimony to the contrary.

"The Court specifically finds that the employees of Fargo Clinic, a co-partnership, and Fargo Clinic, Inc. are well satisfied with their pension plan and do not feel that they are discriminated against. The partner physicians would if they had the opportunity, come under the employees' pension plan, but this they cannot do because of the statute and the regulations.

"The Court specifically finds that the two pension plans do not discriminate against the employees. They favor the employees."

The trial court's conclusion that the partners were prohibited by statutes and regulations from coming under the employees' plan is erroneous.

The manager's testimony that the employees were satisfied with the plan is not persuasive and is irrelevant.

Our primary concern is with the lack of evidence as to the number of em-

ployees that can be reasonably expected to gain a vested interest in pension benefits. If the eligibility and vesting requirements are read together, it is clear that employees who are hired in their late teens or early twenties will have to work for twenty-five years or more to gain vested rights.

The record indicates that many young men and women will be employed at that early age. It is equally clear, on the other hand, that the partners will be at or near thirty years of age when they are accepted in that status.

Under such circumstances, it may well be that the vesting provisions and eligibility clauses will operate to effectively exclude so many employees from the practical benefits of the plan that its value to the employee group as a whole is illusory. If this is the case, the plan is discriminatory within the meaning of the statute even if the contributions to the employees' plan are and will continue to be greater than to the partners' plan.

In view of the importance of the issue, in light of the fact that the government's case was presented on what we consider to be an erroneous view of the law, as the trial court considered factors in reaching its decision that we do not feel to be relevant and as insufficient evidence was introduced on other factors which we consider to be relevant, we reverse and remand. 28 U.S.C. § 2106 (1964 ed.); American Range Lines v. Commissioner of Int. Rev. (2d Cir. 1952) (see cases cited in note 4); Kastel v. Commissioner of Internal Revenue, 136 F.2d 530 (5th Cir. 1943). Cf., Marcella v. Commissioner of Internal Revenue, 222 F.2d 878 (8th Cir. 1955). The record may be reopened so that the parties will have an opportunity to present additional evidence in the light of this opinion. Stock Yards Nat. Bank v. Comm. of Internal Revenue, 153 F.2d 708 (8th Cir. 1946). Accord, United States v. Third Nat. Bank., 390 U.S. 171, 88 S.Ct. 882, 19 L.Ed.2d 1015, 1032 (1968).