CONTAINER SERVICE COMPANY,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 3995.

United States District Court,
S. D. Ohio, W. D.

May 3, 1972.

Smith & Schnacke by Peter J. Donahue, Dayton, Ohio, for plaintiff.

William Milligan, U. S. Atty., Columbus, Ohio, Scott P. Crampton, Asst. Atty. Gen., Donald R. Anderson, John A. Flanaghan, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

WEINMAN, Chief Judge.

This is a tax refund action wherein the plaintiff, Container Service Company, seeks to recover the sum of $10,080.-00 representing taxes allegedly wrongfully collected by the Internal Revenue Service for the taxable years 1968 and 1969. The amount of income tax for which a refund is sought results from the action of the Commissioner of Internal Revenue in denying the plaintiff a deduction for contributions made by the plaintiff to a profit-sharing plan in the taxable years 1968 and 1969. The sole issue raised in this action is whether plaintiff's profit-sharing plan in operation discriminates in favor of employees who are officers, shareholders, or highly compensated employees within the meaning of Section 401(a) of the Internal Revenue Code of 1954 so that contributions made to a profit-sharing trust established under the plan are not deductible for federal income tax purposes under Section 404(a) of the Internal Revenue Code of 1954.

Most of the relevant facts have been stipulated by the parties with the exception that plaintiff has presented testimony with respect to its collective bargaining negotiations with the Teamsters Union who was the bargaining representative for hourly employees excluded from coverage under the profit-sharing retirement plan.

## STATEMENT OF FACTS

The plaintiff, Container Service Company, during the years 1968 and 1969 was a corporation organized and existing under the laws of the State of Ohio. During the fiscal years ending June 30, 1968, and June 30, 1969, the Company was engaged in the operation of a refuse and waste collection business with its principal place of business at 2344 Dryden Road, Dayton, Ohio. The Company maintained its books and records on an accrual basis with the fiscal year ending on June 30, of each year.

The Company is no longer in existence having merged on June 24, 1971 with Container Services, Inc., a Delaware Corporation.

During the years 1968 and 1969 the stock ownership of Container Service Company was as follows:

NAME

| | |
|---|---|
| Robert Aldredge | 29 shares |
| Howard Aldredge | 29 shares |
| Lawrence E. Brannon | 29 shares |
| Lloyd H. O'Hara | 4 shares |

During the years 1968 and 1969 the officers of Container Service Company were as follows:

| | |
|---|---|
| Robert Aldredge | President |
| Howard Aldredge | Vice-President |
| Lawrence E. Brannon | Vice-President |
| Lloyd H. O'Hara | Secretary |

With the exception of Mr. O'Hara, the officer-shareholders of the plaintiff Company were engaged in the daily management of the Company's business during the taxable years in question.

On or about June 28, 1968, plaintiff's Board of Directors formally adopted "The Container Service Company Profit-Sharing Plan" effective June 30, 1968 and on the same date adopted "The Container Service Company Profit-Sharing Retirement Trust" effective June 30, 1968.

The profit-sharing plan extended coverage to "any office, salaried or clerical employee regularly employed by the Company on June 30, 1968, or on any anniversary date thereafter on a full-time basis who has had one (1) full year of service." This plan was designed to provide retirement benefits to its continuous service employees.

At the end of the fiscal year ending on June 30, 1968, plaintiff employed a total full-time work force of twenty persons. Out of this total work force, plaintiff employed six persons in the category of office salaried and clerical workers and five of these employees were eligible for participation in the

plan. During the fiscal year 1968 plaintiff employed fourteen full-time hourly paid employees who were permanently ineligible for coverage under the plan. The five salaried employees who were eligible for participation in the plan during the fiscal year 1968 were Howard D. Aldridge, Corporate Officer who earned $31,100.00 in 1968, Robert L. Aldridge, Corporate Officer who earned $31,100.00 in 1968, Lawrence E. Brannon, Corporate Officer who earned $33,600.00 in 1968, R. L. Fahrenholz, Company foreman who earned $8,840.00 in 1968 and Mary L. Shigley, a bookkeeper who earned $4,760.00 in 1968.

Out of a total work force of twenty-one employed by plaintiff in fiscal year 1969, six employees were within the category of salaried employees and five out of the six salaried employees were eligible for benefits under the plan.

In the fiscal year 1969 the five salaried employees who were eligible for participation in the profit-sharing plan were Howard D. Aldridge, Corporate Officer, who earned $31,200.00 in 1969, Robert L. Aldridge, Corporate Officer who earned $31,200.00 in 1969, Lawrence E. Brannon, Corporate Officer who earned $28,700.00 in 1969, R. L. Fahrenholz, Company foreman, who earned $9,010.00 in 1969 and Leona Baker a clerk who earned $4,490.00 in 1969. In 1969 fifteen hourly paid employees were permanently excluded from coverage under the plan.

The fourteen hourly paid workers and the fifteen hourly paid workers who were excluded from the coverage of the plan in the years 1968 and 1969 respectively earned approximately $6,000.00 per man in each fiscal year.

A detailed schedule listing the names of all the plaintiff Company's full-time employees at the end of the fiscal years, 1968 and 1969, their dates of birth, dates of hire, job duties and total compensation is contained in Exhibit "G" of the stipulation and is incorporated herein by reference.

During the taxable years in question the plaintiff's hourly paid employees were organized for the purposes of collective bargaining and represented by Local 957 of the Teamsters Union. At the time the pension plan was instituted in 1968 these hourly paid employees were working under a collective bargaining agreement negotiated between the plaintiff Company and the Teamsters Union in 1966. During the 1966 negotiations no discussions were held between the Company and the Union with respect to pension benefits. The 1966 collective bargaining agreement remained in effect until April 1969 when a new collective bargaining agreement was executed between the plaintiff Company and the Teamsters Union. During the 1969 negotiations the Union made a request for participation in the Central States Teamsters Pension Fund but later decided to abandon this demand for pension benefits in lieu of receiving immediate benefits in the form of wage increases. At no time during the 1969 collective bargaining negotiations did the plaintiff Company offer to include its hourly paid employees within the coverage of "The Container Service Company Profit Sharing Plan."

The Company contributed $9,000.00 to the Container Service Company Profit Sharing Retirement Trust for the fiscal year ending June 30, 1968 and $12,000.00 for the fiscal year ending June 30, 1969 and claimed deductions for those contributions on its 1968 and 1969 income tax returns.

Plaintiff's federal income tax returns for the fiscal years 1968 and 1969 were timely filed. Upon audit, the Internal Revenue Service determined that the plaintiff's profit-sharing plan did not qualify under Section 401 and the trust did not qualify under Section 501 and therefore disallowed deductions for contributions by the plaintiff in the fiscal years 1968 and 1969 to its profit-sharing trust and assessed additional taxes with interest. On August 1, 1970, plaintiff timely filed a claim for refund with

238

the Internal Revenue Service and this claim was formally disallowed by the Internal Revenue Service on October 5, 1970. On January 13, 1971 plaintiff commenced the present action seeking a refund of taxes paid as the result of the disallowance of the deductions for contributions to the profit-sharing trust.

## DISCUSSION

■ The provisions of Section 401, Title 26 U.S.C. governing qualified pension plans were adopted by the Congress to prevent the award of tax benefits for a plan which is being used as a method of tax avoidance by deferring the income of highly compensated employees and to prevent the pension plans from being used to provide retirement benefits exclusively for highly paid employees rather than for employees in general. United States v. Hall, 398 F.2d 383 (C.A.8 1968). The provisions of Section 401 are the embodiment of a congressional policy to limit favorable tax treatment to pension plans which benefit the welfare of employees in general rather than the exclusive welfare of highly paid employees and officers.

In order to accomplish this objective of limiting eligibility to pension plans and profit-sharing plans which provided for the welfare of employees in general, the Congress under Section 401 set up two basic qualification tests:

1. The percentage test whereby the plan can qualify if it benefits either seventy percent or more of all employees or it benefits eighty percent of all eligible employees provided seventy percent or more of all employees are eligible to benefit under the plan (Section 401(a) (3) (A)) or;

2. The special classification test whereby the plan is eligible if the special class set up by the employer is found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, supervisory employees or highly paid employees (Section 401(a) (3) (B)).

A plan which satisfies either of these two tests must also fulfill the additional qualification requirement that "contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees." (Section 401(a) (4)).

The plaintiff's profit-sharing plan does not satisfy the percentage eligibility test under Section 401(a) (3) (A). Thus the eligibility of plaintiff's profit-sharing plan depends upon whether the plan satisfies the special classification test under Section 401(a) (3) (B) which authorizes the Secretary or his delegate to initially determine whether or not the plan is discriminatory in favor of employees who are officers, shareholders, supervisory personnel or highly compensated employees.

■■ In the present case the Commissioner of Internal Revenue found that plaintiff's plan was discriminatory in coverage and benefits in favor of officers, shareholders, supervisory employees and highly paid employees. While the finding by the Commissioner is not conclusive, the taxpayer bears a heavy burden to upset a decision by the Commissioner that the pension plan is discriminatory and that payments to the plan are not deductible in computing income tax. John Duguid & Sons, Inc. v. United States, 278 F.Supp. 101, 106 (N.D.N.Y.1967). As the tax court has held the decision of the Commissioner on the issue of discrimination in a pension plan should not be set aside unless it is found to be arbitrary or an abuse of discretion. Peter F. Mitchel Corp. v. Commissioner, T.C.Memo., 1968–209 (Decided September 23, 1968) and T.C.Memo, 1969–73 (Decided April 16, 1968); Ed and Jim Fleitz, Inc. v. Commissioner of Internal Revenue, 50 T.C. 384 (1968).

■ The facts of the present case support the conclusion of the Commissioner that the plaintiff's profit-sharing plan discriminates in coverage and benefits in favor of the officers, shareholders, supervisory personnel and highly com-

pensated employees of the plaintiff Company. In the fiscal year 1968, the profit-sharing plan operated to benefit only five employees out of a total full-time work force of twenty employees. The five employees covered by the plan consisted of Robert Aldredge, Howard Aldredge and Lawrence E. Brannon, officer-shareholders of the Company who each earned a salary of approximately $31,000.00, R. L. Fahrenholz, the Company foreman who earned $8,840.00 in 1968 and Mary L. Shigley, a bookkeeper who earned $4,760.00 in 1968. In the fiscal year 1969, the profit-sharing plan covered only five employees out of a total work force of twenty-one employees. The five covered employees consisted of the three officer-shareholders, the Company foreman and Leona Baker a clerk who earned $4,490.00 in 1969. The fourteen hourly rated employees excluded from coverage in 1968 and the fifteen hourly rated employees excluded from coverage in 1969 each earned approximately $6,000.00 in each fiscal year. Four out of the five employees who benefited under the plaintiff's profit-sharing plan fell within the prohibited group of officers, shareholders, supervisors or highly compensated employees. Judged by any reasonable objective criteria the plaintiff's plan in operation clearly discriminates in favor of the prohibited group. Under the circumstances of the present case it cannot be said that the Commissioner abused his discretion in determining that plaintiff's profit-sharing plan did not qualify for favorable tax treatment because it was discriminatory in favor of employees who were officers, shareholders, supervisors or highly compensated employees.

Plaintiff attempts to overcome the effect of this objective analysis indicating discrimination in the coverage of the profit-sharing plan by emphasizing that the only employees excluded from eligibility under the plan were union personnel whose compensation and other employment benefits including pensions were determined by the collective bargaining process. Plaintiff points out that under federal labor law pension benefits are a mandatory subject of collective bargaining and that it could not unilaterally determine to include its union personnel within the coverage of the profit-sharing plan without negotiating with the employees' duly authorized bargaining representative. The plaintiff Company contends that it has not discriminated in any way against the union personnel in the coverage of its profit-sharing plan because those employees through their duly authorized bargaining representative, waived coverage under the Company's profit-sharing retirement plan in 1969 bargaining negotiations. In support of its position, plaintiff has presented the testimony of Gary Legg, business agent of Local 957 of the Teamsters Union which represented plaintiff's non-salaried employees. Mr. Legg testified that during the 1969 collective bargaining negotiations the Union decided to seek immediate benefits in the form of wage increases and hospitalization insurance rather than deferred benefits in the form of pensions.

The plaintiff Company, therefore, contends that in the absence of the Union's consent to the inclusion of its members into the plaintiff's profit-sharing plan or any other type of profit-sharing or pension plan the Company under federal labor law was prohibited from including its hourly rated Union personnel within the coverage of its plan and therefore it was not guilty of discrimination in favor of its shareholder-officers and supervisory personnel.

■ The Court finds this argument unpersuasive. The Court agrees with the general proposition that the plaintiff Company would violate federal labor law if it unilaterally included its hourly rated unionized personnel within the coverage of the profit-sharing retirement plan. Under the National Labor Relations Act as amended mandatory subjects of collective bargaining include bargaining to include provisions for pension benefits for active employees and an employer's unilateral action to include unionized personnel under a pen-

sion plan would constitute an unfair labor practice. See e. g., National Labor Relations Board v. Black-Clawson Company, 210 F.2d 523 (C.A.6 1954) (dictum); National Labor Relations Board v. General Motors Corporation, 179 F.2d 221 (C.A.2 1950); W. W. Cross & Company v. National Labor Relations Board, 174 F.2d 875 (C.A.1 1949); Inland Steel Company v. National Labor Relations Board, 170 F.2d 247 (C.A.7 1948) cert. denied 336 U.S. 960, 69 S.Ct. 887, 93 L. Ed. 1112 (1949). Thus the consent or agreement of the Union representing plaintiff's unionized personnel was required in order for these employees to be included within the coverage of plaintiff's profit-sharing plan. However, much of the force of the plaintiff's argument is undermined by the fact that the evidence does not show that the plaintiff Company in its collective bargaining negotiations with the Teamsters Union ever offered to include its hourly employees within the coverage of the plan.

Furthermore, assuming that the plaintiff Company was unable to include its unionized personnel within the coverage of the plan because the collective bargaining representative of these employees elected to pursue increased wages instead of pension rights on behalf of its members, the Court does not believe that this fact will require a reversal of the Commissioner's finding that plaintiff's profit-sharing retirement plan discriminates in favor of the prohibited group. In enacting the qualification requirements for pension plans under Section 401 the Congress made a policy decision that tax benefits should be granted only to those pension plans which benefit the welfare of all employees in general. Thus qualification was denied to plans which discriminate in favor of officers, shareholders, supervisors or highly compensated employees. Where the coverage of the plan in operation effects discrimination in favor of this prohibited group and denies benefits to employees in general the plan simply cannot qualify for tax benefits regardless of whether the discrimination resulted from intentional conduct on the part of the taxpayer or from extraneous factors over which the taxpayer had no control. Permitting the taxpayer to take a deduction for contributions to the profit-sharing retirement plan which operates to benefit a limited number of highly compensated managerial personnel would frustrate the congressional policy limiting qualification to profit sharing or pension plans which benefit the welfare of employees in general.

The question of whether an accommodation should be made between the non-discrimination requirements of Sections 401(a) (3) (B) and 401 (a) (4) and the prohibitions of federal labor law against unilateral changes in the terms and conditions of employment so that a small company such as plaintiff, employing primarily hourly paid unionized personnel, can establish a qualified profit sharing plan for its small staff of salaried managerial employees involves questions of national taxing policy which can best be resolved by the Congress and not the federal courts.

It should be noted that the taxpayer's argument that the coverage under its profit-sharing plan is not discriminatory in favor of the prohibited group because the excluded employees were unionized personnel is not a new one. Similar arguments have been rejected in a number of cases. John Duguid & Sons, Inc. v. United States, 278 F.Supp. 101, 104–105 (N.D.N.Y.1967); Peter F. Mitchel, Corp. v. Commissioner, T.C.Memo 1968–209 (Decided September 23, 1968) and T.C.Memo 1969–73 (Decided April 16, 1969); and Ed & Jim Fleitz, Inc. v. Commissioner of Internal Revenue, 50 T.C. 384 (1968); Loevsky v. Commissioner of Internal Revenue, 55 T.C. 1144 (1971).

The Court approves of the following statement by the Tax Court in the Loevsky case:

"In this case, we have sustained the Commissioners determination that the classification discriminates in favor of

 

the prohibited group. In addition, it is certain from the preceding paragraph that the statutory requirements cannot be cast aside because the hourly rated employees and one salaried employee of the petitioners are unionized, have the right and the power to bargain collectively for coverage under the plan or a similar plan, but do not do so, or seek higher hourly wage rates in lieu of coverage under the plan or a similar plan. Extraneous circumstances such as these cannot justify the qualification of a plan where the classification of employees, and thus a plan itself in effect discriminates in favor of the prohibited group.

"The failure to provide for the exclusion of unionized employees in determining whether or not the nondiscrimination requirements of Sections 401(a) (3) (B) and 401(a) (4) are met may have been an oversight on the part of Congress, or as is more likely, the failure may be attributable to the fact that problems such as those now before us simply were not foreseeable given the state of the law in the tax and labor areas at the time these provisions were enacted. Furthermore, we realize that the effect of our decision in this regard may be to prevent the employer from establishing a pension or profit-sharing plan for his non-union personnel. This is especially true of the small business where only a small number of salaried individuals may be required to operate the business for the bulk of the work force being composed of unionized employees.

"However, despite the harshness of the result in this case and the potential harshness of the future application of our decision here, it is properly the function of Congress and not this Court to make any appropriate adjustments to the law in this area. We cannot ignore the plain meaning of the statutory language and 'the clear indications of Congressional in-

tent to achieve a more equitable result."

Accordingly, the Court concludes that the Commissioner correctly determined that plaintiff's profit-sharing retirement plan, covering only its salaried employees, in its operation discriminates in favor of employees who are officer-shareholders, supervisors and are highly compensated and correctly disallowed the deductions for contributions by the plaintiff to its profit-sharing trust on the plaintiff corporation's income tax returns for the fiscal years 1968 and 1969.

The above shall constitute the Court's findings of fact and conclusions of law as required by Rule 52(a) Federal Rules of Civil Procedure.