ARMANCO PRODUCTIONS, INC., A DELAWARE CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5013–65. Filed December 8, 1967.

*Bernard Kleinman*, for the petitioner.
*William J. Gerard*, for the respondent.

OPINION

FAY, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the taxable period June 5, 1961, to April 30, 1962, in the amount of $41,262.12.

Various determinations contained in the statutory notice of deficiency have been agreed to by the parties, and the sole issue for determination is whether petitioner is entitled to a deduction in the amount of $53,491.08 for the taxable period ended April 30, 1962, for contributions made to a profit-sharing trust.

All of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioner, Armanco Productions, Inc., is a Delaware corporation, having its principal place of business in Chicago, Ill. It timely filed its corporate Federal income tax return for the taxable period ended April 30, 1962, with the district director of internal revenue, Chicago, Ill.

The outstanding stock of petitioner was held as follows: 66⅔ percent by George R. Newhart (a.k.a. Bob Newhart) (hereinafter referred to as Newhart) and 33⅓ percent by Frank J. Hogan (hereinafter referred to as Hogan).

Petitioner produced the "Bob Newhart Show" television series which began on October 11, 1961, and terminated for the season on June 13, 1962. Generally, petitioner and its affiliated corporation, Armanco Enterprises, Inc. (hereinafter referred to as Enterprises), were formed to exploit the popularity of Newhart as an entertainer. Petitioner is engaged in the creation and production of television programs and Enterprises conducts personal appearance tours, nightclub engagements, concerts, and other personal appearances.

Hogan, petitioner's president, and Music Corporation of America negotiated with the National Broadcasting Co. and with various sponsors for the renewal of the "Bob Newhart Show" for the season to begin in September 1962. These negotiations proved unsuccessful, and on or about June 1, 1962, petitioner was informed that the show would not be renewed for the coming season. Subsequently, petitioner joined with others in producing a television show entitled "The Entertainers" during the 1964–65 television season.

On August 15, 1961, Enterprises executed a trust agreement by which it established a profit-sharing trust for its employees entitled "Armanco Employees' Profit Sharing Trust" (hereinafter referred to as the trust).

The trust in pertinent part provides as follows:

ARTICLE 1. EFFECTIVE DATE AND NAME.

(a) The effective date of the Trust shall be February 28, 1962, retroactive to March 1, 1961.

(b) The Profit Sharing Trust Fund hereby established shall be known and designated as the "ARMANCO EMPLOYEES' PROFIT SHARING TRUST," and it is herein sometimes referred to as the "Trust."

## ARTICLE 2. DEFINITIONS.

As used in this Agreement, the following terms shall have the meanings here-inafter set forth.

(a) "Company": ARMANCO ENTERPRISES, INC., * * * and any person, firm or corporation into which said Company may be merged or consolidated or by which it may be succeeded and which may adopt this Trust. Said term, "Company," shall also include any subsidiary of ARMANCO ENTERPRISES, INC., or any affiliated company becoming part of this Trust and agreeing to all of the terms and conditions of this instrument.

 *  *  *  *  *  *  *

(i) "Eligibility Date": February 28 of each fiscal year.

(j) "Employee": Any person, including any officer, who is actively engaged in the conduct of the business of the Company in the Continental United States in a capacity other than solely as a director, but excluding those who are not permanent employees. A permanent employee is one whose service was not intended to terminate on the completion of a certain job for which he was employed.

(k) "Participant": Any employee who has qualified under this Agreement, as provided under Article #3.

(l) "Inactive Participant": A former Participant who is not entitled to share in Company contributions for any fiscal year and whose account has not been completely distributed.

 *  *  *  *  *  *  *

## ARTICLE 3. EMPLOYEES ENTITLED TO PARTICIPATE.

Employees of the Company eligible to become Participants under this Trust shall be all those present and future employees of the Company who as of any eligibility date:

(a) Agree to the terms and conditions of this Trust;

(b) Are paid hourly, weekly, semi-monthly, periodic or annual compensation on the basis of permanent employment;

(c) Are full-time employees who have not attained the age of seventy-five (75) years;

(d) All personnel employed by the Company as of the effective date of this Trust shall be eligible to become Participants therein. All personnel employed subsequent to February 28, 1962 must complete six (6) months of continuous service to be eligible to participate therein.

 *  *  *  *  *  *  *

## ARTICLE 5. CONTRIBUTIONS BY COMPANY.

(a) The Company shall contribute to the Trust annually, but not later than the time prescribed by law for filing its Federal Income Tax return (plus any extension of the filing date), beginning with the fiscal year ended February 28, 1962, and for every taxable year thereafter, a sum equal to ten percent (10%) of the net profit as shown by the corporation's income tax return, before any deduction of contribution to this Trust and state and Federal taxes. In any event, the sum shall not be greater than the maximum amount which is an allowable deductible business expense under the then applicable provisions of the Internal Revenue Code.

 *  *  *  *  *  *  *

## ARTICLE 7. ALLOCATION OF COMPANY CONTRIBUTIONS.

(a) Contributions made by the Company to the Trust for any fiscal year of the Company shall be allocated and credited by the trustees to each Partici-

pant's account in the ratio that the number of participating salary units to which he is entitled bears to the total number of such units of all the Participants, as indicated hereunder. * * *

\* \* \* . \* \* \* \*

### ARTICLE 9. FORFEITURES.

Credits to the accounts of Participants which are forfeited on termination of employment shall be allocated to the individual accounts of remaining Participants as of each accounting date in the same manner as provided for the allocation of Company contributions.

\* \* \* \* \* \* \*

### ARTICLE 12. DISTRIBUTIONS.

\* \* \* \* \* \* \*

(b) * * * The said vesting of values shall not accrue until the full twelve (12) month period of participation expires, and any termination prior thereto forecloses the employee from any right to any benefits for the period in question. Participation in the fund is considered to commence on the last day of the fiscal year in which the employee becomes eligible to participate in this Profit Sharing Plan. All amounts not vested in the Participant shall become forfeitures and shall be distributed as forfeitures as provided in this Agreement.

| | | |
|---|---|---|
| 12 months—10% | 60 months—50% | 96 months—80% |
| 24 months—20% | 72 months—60% | 108 months—90% |
| 36 months—30% | 84 months—70% | 120 months—100% |
| 48 months—40% | | |

On August 22, 1961, the Internal Revenue Service issued a determination letter stating that the trust was qualified under section 401(a) of the Internal Revenue Code of 1954. Thereafter, petitioner, an affiliate of Enterprises, elected to join the plan pursuant to the terms of article 2(a) of the trust agreement.

Four employees of the petitioner were employed continuously throughout the period in question. Throughout this period they were participants of the trust, namely, Newhart, Hogan, Sam Honigberg, the publicity director, and Margaret M. Richards, bookkeeper, stenographer, and vice president. The record does not reveal any other participants in the trust though petitioner's total payroll for the taxable period numbered 215 persons and petitioner alleged that all such people were covered by the trust. The services of 211 of these 215 people were terminated on or before June 30, 1962, the remaining four being those noted above. The 211 separations occurred in the following periods, the majority of individuals having worked but 1 week or pay period:

| Period | Number of separations |
|---|---|
| October through December 1961 | 74 |
| January through March 1962 | 76 |
| April through June 1962 | 61 |
| | 211 |

On July 3, 1962, after it knew that the show would not be renewed and after the services of all but four of its employees had been terminated, petitioner paid $53,491.08 to the trust. This amount is in excess of 20 percent of net profit as defined in the trust agreement and is equal to 15 percent of the total payroll for all its employees. This amount was allocated under the trust as follows: Newhart and Hogan, $7,471.19; Honigberg and Richards, $2,875.50; and 211 others $43,144.39. The latter figure though credited to the accounts of the 211 was, pursuant to trust provisions, treated as forfeited. As a result of the forfeiture, this amount was credited to the accounts of the remaining participants as follows: Newhart, $15,148; Hogan, $15,148; Honigberg, $10,048.76; and Richards, $2,799.60.

On its return for the taxable period ended April 30, 1962, petitioner took a deduction for the amount of its payment to the trust, $53,491.08. Respondent, in his statutory notice of deficiency, disallowed such deduction, stating that—

It is determined that the deduction for $53,491.08 * * * claimed * * * as contributions to a profit sharing trust [is] not [an] allowable deduction as you have failed to establish that you are entitled to such deduction. * * *

The sole issue for determination is whether petitioner is entitled to a deduction for the taxable period ended April 30, 1962, in the amount of $53,491.08 for contributions made to a profit-sharing trust. Respondent argues that the trust failed to comply in its operation with the provisions of section 401(a)(4) of the Internal Revenue Code of 1954.

Section 401(a) provides:

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

* * * * * * *

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

Regulations section 1.401–1(b)(3) provides in part:

All of the surrounding and attendant circumstances and the details of the plan will be indicative of whether it is a bona fide stock bonus, pension, or profit-sharing plan for the exclusive benefit of employees in general. The law is concerned not only with the form of a plan but also with its effects in operation. For example, section 401(a)(5) specifies certain provisions which of themselves are not discriminatory. However, this does not mean that a plan containing these provisions may not be discriminatory in actual operation.

In the alternative, he has argued that, if the trust is qualified, the maximum deduction possible under section 404(a)(3)(A) would be $10,346.69.

On the state of the record before us, we are of the opinion that petitioner has not met its burden of proving that it is entitled to the claimed deduction of $53,491.08 for the taxable period ended April 30, 1962, and therefore we must sustain respondent's determination and hold that petitioner is not entitled to any deduction for contributions made to the profit-sharing trust. Our conclusion makes it unnecessary to consider respondent's alternative argument that the deduction should be limited to $10,346.69.

Section 401(a) and the regulations pursuant thereto require that the plan not discriminate in favor of employees who are officers, shareholders, or highly compensated employees, not only on its face but also in operation.[1] Petitioner has failed to meet its burden on this latter requirement.

Initially, the record is barren of any proof that the terms of the plan were respected in the matter of employee plan participation. The plan provided that those full-time employees employed as of the qualification date, February 28, 1962, were entitled to participate while those employed subsequent to that date would have to complete 6 months of continuous service in order to be eligible. With the exception of the four persons referred to earlier, we are unable to find any evidence relating to the status of various employees if in fact all were employees and not independent contractors, whether they were employed full time, whether they were employed on the qualification date, or whether anyone not employed on that date could have completed 6 months of continuous service. We are of the opinion, however, that not all 215 or even a substantial number of these employees could have qualified as alleged by petitioner in its statement supporting its deduction.

Second, the record does not reveal that any employee, other than the four noted above, was aware of the plan or, in the alternative, if having been so informed, was given the opportunity to agree to participation therein, pursuant to article 3 of the trust agreement.

Third, the terms of the plan with regard to the amount of the contribution authorized by the plan were totally ignored by petitioner without any explanation being offered for its having done so. Under the terms of the plan, the contribution was to be a sum equal to 10 percent of the corporation's net profits before the deduction of the contribution itself and Federal and local taxes but limited to the

---

[1] Though the parties have not argued the effect of the determination letter issued by the Internal Revenue Service stating that the plan was qualified under sec. 401(a), under the unusual circumstances of this case we can attach no significance to such approval.

maximum amount allowed as a deduction under the provisions of the Internal Revenue laws. In the year in question, petitioner's contribution was in excess of 20 percent of net profit computed according to the above formula. Though we are aware that the presence of a formula would not necessarily preclude a larger contribution, the particular circumstances of this case, especially the lack of information as to who were participants in the plan and the fact that such contribution was computed after the employment of all but four of the employees had terminated, require some explanation of this deviation from the terms of the plan.

The record in this case is replete with inconsistency and ambiguity which must be held against petitioner. We conclude that petitioner has failed to meet its burden of proof on this issue, and therefore hold for the respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50.*