Peter F. Mitchell Corp. v. Commissioner.
Peter F. Mitchell Corp. v. Commissioner
Docket No. 634-66.
United States Tax Court
T.C. Memo 1968-209; 1968 Tax Ct. Memo LEXIS 88; 27 T.C.M. (CCH) 1030; T.C.M. (RIA) 68209; September 23, 1968. Filed *88 Petitioner adopted a profit-sharing plan limited to its salaried employees. Its other regular employees are paid wages at hourly rates underunion agreements, and some are covered by the pension plans of two labor unions. Petitioner has only three salaried employees, two of whom are highly paid and are officers and shareholders, and the other one is a bookkeeper-secretary. Held, upon the facts, that the Commissioner did not err in holding that the plan covering salaried employees is not a qualified plan under section 401(a), 1954 Code, because in operation the plan discriminates in favor of officers, shareholders, and highly paid individuals, and, consequently, petitioner's contributions to the plan are not allowable deductions. Ed & Jim Fleitz, Inc. [Dec. 28,974], 50 T.C. 384, followed. Richard S. Pastore for the petitioner. Charles M. Costenbader and Irving Bell, for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax in the amount of $3,148.10 for the fiscal year ended March 31, 1964. Some of the respondent's determinations are not contested. The only issue is whether the petitioner is entitled to a deduction for its contributions to its deferred profit-sharing plan which covers only its salaried employees. The respondent determined that the plan is not qualified under section 401(a) of the 1954 Code. The question is whether the plan in operation discriminates in favor of employees who *91 are officers, shareholders, or highly compensated employees. Findings of Fact Some of the facts are stipulated. The stipulated facts are so found, and are incorporated herein by reference. The Peter F. Mitchell Corporation, a Connecticut corporation, has its principal office in Riverside, Conn. It filed its income come tax return for the fiscal year ended March 31, 1964, with the district director of internal revenue at Hartford, Conn. It keeps its accounts and reports its income on the basis of a fiscal year ending on March 31, and on an accrual method of accounting. Petitioner was organized on October 1, 1962; it is engaged in the business of heavy construction, site preparation, excavation, road work, paving, and a general contracting business. Peter F. Mitchell is its president, and Salvatore Pannone is its vice president and secretary. Mitchell is Pannone's uncle. Mitchell and Pannone own all of petitioner's capital stock, each one owning 50 percent thereof. During its fiscal year ended March 31, 1964, petitioner employed 40 employees, of whom 37 were regular employees who are paid wages on an hourly basis, and three were salaried employees. In the taxable fiscal year *92 petitioner had only three employees who were paid on the basis of a fixed annual salary, namely, Mitchell, Pannone, and a bookkeeper-secretary, Julia Sanna. Mitchell and Pannone were paid same salary, $35,000, each. Julia's annual salary was $4,925. During the taxable year, the salaries of Mitchell and Panone were paid and accrued as follows: Petitioner paid $24,050 to each one, and accrued in the salaries payable accounts the balance, $10,950. Thus, in the taxable year the two offcders were paid in cash salaries totaling $48,100, and the accrued balances were $21,900. During the taxable year, Julia worked part-time for another corporation which reimbursed petitioner $1,890 for Julia's work. Julia worked the balance of the fiscal year for petitioner. Although Julia's annual salary was $4,925, the actual net amount thereof which petitioner paid her in the taxable year was $3,035 after receiving the reimbursement of $1,890 from the other corporation. Of the 37 regular employees, a few were part-time employees; 26 were members of labor unions having pension plans to which petitioner paid contributions; and 11 were not members of those labor unions, and with respect to them petitioner *93 did not make any payments to any pension plan. Petitioner has collective bargaining agreements with two unions, Local 478 of the socalled Operators' Union, and Local 56 of the so-called Laborers' Union. Out of all of petitioner's 37 regular employees, paid on an hourly basis, 11 were members of the Operators' Union during the taxable year, and 15 were members of the Laborers' Union. Out of the 37 hourly-wage employees, 15 worked for petitioner for only a small part of the fiscal taxable year, less than 6 months. Of these 15 employees, nine were not members of either the Operators' or the Laborers' unions, and petitioner paid them wages of from $32 to $576. Of the remaining six employees, one was a member of the Operators' Union, receiving wages of $468; and five were members of the Laborers' Union, and they received wages of from $179.76 up to $1,326.58. Taking into account the above facts relating to 15 employees who worked for petitioner less than 3 months (out of 37 hourlypaid employees) there were 22 employees who worked for petitioner more than 3 months of the fiscal year in question, and of the 22 there were 15 who worked 12 months, and seven who worked less than 12 months. *94 Also, out of those 22 employees, two were not members of either of the above-named unions, and their total wages were $5,251.09 and $4,517. 1032 Of the remaining 20 employees, who worked 12 months, or less, but more than 3 months, 10 belonged to the Operators' Union and 10 belonged to the Laborers' Union. The total wages paid to the 10 employees belonging to the Operators' Union were in the range of from $1,733.58 to $9,972.33, as follows, and for them petitioner made payments to the pension fund of that union as set forth below: *11 10 Members of the Operators' Union
Employee
Total wages
Pension fundpay'ts.
1
$ 9,972.33
$ 162.70
2
7,720.15
153.60
3
8,488.72
159.60
4
2,305.60
48.80
5
1,733.58
50.40
6
2,939.75
78.40
7
4,035.52
80.08
8
4,598.00
112.00
9
4,720.75
84.00
10 4,558.37
92.00
Total
$51,072.77
$1,021.58
The following sets forth the wages paid to the 10 employees who were members of the Laborers' Union, and the amount petitioner paid to that union's pension fund for them: *11 10 Members of the Laborers' Union
Employee
Total wages
Pension fundpay'ts.
1
$ 4,870.64
$ 200.16
2
4,396.11
170.08
3
4,930.72
200.80
4
4,280.76
190.88
5
6,008.41
228.72
6
3,710.72
172.16
7
4,819.62
202.64
8
5,436.69
222.56
9
2,723.28
129.68
10 3,581.50
152.08
Total
$44,758.45
$1,869.76
*95 On March 31, 1964, the effective date, petitioner executed an agreement entitled, "Profit-Sharing Trust Agreement." Under this agreement, petitioner established a deferred profit-sharing plan for all of its salaried employees, Mitchell, Pannone, and Julia. None of them were members of a union. This plan consists of and incorporates a profit-sharing trust of which Mitchell, Pannone, and Richard Pastore are the trustees. The agreement is incorporated herein by reference. On March 31, 1964, the petitioner paid, or accrued, a liability of $11,238.75 to, and with respect to, the profit-sharing plan and trust for the accounts of the three participants under the plan: Peter F. Mitchell
$ 5,250.00
Salvatore B. Pannone
5,250.00
Julia Sanna 738.75
Total
$11,238.75
The above amounts paid and accrued for the accounts of Mi The above amounts paid and accrued for the accounts of Mitchell and Pannone represented 15 percent of their annual salaries. The sum of $738.75 paid and accrued for Julia's account was based on the rate of her annual salary, $4,925, and was 15 percent thereof. But the net amount paid to her was $3,035 (after petitioner was reimbursed $1,890 for *96 her services to another corporation), and 15 percent of $3,035 amounts to $455.25. Thus, 15 percent of the net sum of the salaries paid and accrued by petitioner to the three salaried employees amounts to $10,955.25. The petitioner's profit-sharing plan provides, inter alia, as follows: (1) Employees covered by the plan are persons regularly employed on a salaried basis, excluding persons customarily employed for not more than 30 hours in any one week, or for not more than 9 months in any calendar year. (2) Each employee who is not a member of a labor union which provides for pension or retirement benefits paid by the employer, shall be eligible to become a participant in the Mitchell Corporation plan on the first participation date which occurs on or after attaining the age of 25 years, and completing 3 entire years of continuous employment, or upon becoming 30 years of age, and completing 1 entire year of continuous employment. (3) Mitchell Corporation shall pay to the trustees of the plan for each fiscal year a contribution determined by the profits of the corporation for the fiscal year, namely: no amount on the first $2,000 of profits; but if the profits exceed $2,000, then *97 the contribution shall be 20 percent of the first $10,000 of profits above $2,000; 40 percent of the next $30,000 of profits; and 60 percent of the balance of profits above $30,000. The board of directors may vote, prior to the end of any fiscal year, to contribute for that year, a different percentage or amount of net income, or to make no contribution for the current fiscal year. (4) It is provided in the agreement that if for any taxable year the employer shall contribute to the trust an amount less than 15 percent of the total compensation otherwise paid or accrued to all participants, the amount by which the contribution was less than such 15 percent may be carried forward and deducted when paid in succeeding taxable years in order 1033 of time; and that if for any taxable year the employer shall contribute to the trust an amount in excess of 15 percent of the compensation of the participants, such amount shall be held unallocated by the trustees and carried forward to succeeding taxable years. (5) The agreement provides that the employer's initial contribution shall be $800. (6) The employer's contributions shall be invested by the trustees, as provided in the agreement, *98 including the purchase of insurance, for the benefit of the trust, on the lives of any employee whose death could result in a reduction of the employer's profits. (7) The employer's contributions to the trust shall be irrevocable. However, the employer retains an option to terminate the trust. (8) The plan defines normal retirement date as the date of the anniversary after the employee's participation in the plan nearest to his 65th birthday. If he was over 55 years old when he first came under the plan, the normal retirement date is the 10th anniversary after the date of entry under the plan, or the date nearest his 70th birthday, if the time for retirement is earlier than 70 years of age. (9) The plan provides retirement benefits for a retired, participating employee. (10) Contributions to the plan are made only by the employer. (11) A participant may continue to work as an employee beyond his normal retirement date with the employer's consent. When the participant retires and ceases to be an employee, upon reaching the retirement date, or after, he shall receive retirement benefits based on his account under the plan and trust. The benefits include disability and death benefits. *99 If the participant ceases to be an employee for reasons other than retirement, disability, or death, he is entitled to receive as a severance benefit a stated percentage of the amount credited to his account under the plan, the percentage being based upon the number of years of his participation under the plan of from 2 to 11 years or more, but no severance benefit will be paid if the participation was for less than 2 years. If the participation has been for 11 years, or more, the severance benefit will equal 100 percent of the amount credited to the employee's account. The petitioner filed Form 2950, "Statement in Support of Deduction for Payments to an Employees' Pension Profit-Sharing Stock Bonus Trust or Annuity Plan," with the district director of internal revenue at Hartford, Conn., on October 22, 1964. The district director denied approval of petitioner's profit-sharing plan for its salaried, nonunion employees. He held that the plan did not qualify as a qualified plan under section 401(a)(3)(B) because, in the director's opinion, the employee coverage under the plan was discriminatory in favor of the highly paid supervisory employees who are officers and shareholders of petitioner. *100 On review, the district director's ruling was upheld by the Commissioner who determined that the contributions to the plan discriminated in favor of the prohibited group. Ultimate Finding of Fact The respondent did not err in determining that petitioner's deferred profit-sharing plan, covering only its salaried employees, in its operation discriminates in favor of employees who are officer-shareholders and are highly compensated. Opinion The petitioner claims a deduction of $11,238.75 for its contribution in the taxable year to its deferred profit-sharing trust for its salaried employees. Petitioner contends that the plan is a qualified plan under section 401(a), 1954 Code; that it satisfies the nondiscriminatory requirements of sections 401(a)(3) and 401(a)(4); and that the amount of the claimed deduction is the correct amount, 15 percent of compensation, under section 404(a)(3)(A). The respondent disallowed the deduction on the ground that petitioner had failed to establish that the salaried employees' profitsharing plan, in operation, does not discriminate in favor of the prohibited class of employees. Section 401(a)(5) provides in part that a classification set up *101 by the employer "shall not be considered discriminatory within the meaning of paragraph (3)(B) or (4) merely because it excludes employees the whole of whose remuneration constitutes 'wages' * * ' or merely because it is limited to salaried or clerical employees." This statutory provision is one part of the whole scheme of section 401(a) and the related statutory provisions, and it represents one of several guidelines. Consideration has been given to the pertinent parts of section 401(a)(5). Section 401(a)(3)(B) gives the Secretary or his delegate authorization to determine whether a trust and plan is, or is not, "discriminatory in favor of employees who are officers, shareholders, persons whose 1034 principal duties consist in supervising the work of other employees, or highly compensated employees." One aspect of the issue to be decided is whether the respondent's determination, that the petitioner's plan for its salaried employees is discriminatory in favor of the covered employees, is an arbitrary one and represents an abuse of discretion under the statute. Petitioner contends that the respondent's refusal to determine that the petitioner's plan is a qualified plan under *102 section 401(a) is "a clear abuse of discretion." The question whether discrimination exists in respect of a plan and trust is a question of fact which first must be determined by the Commissioner, and his determination should not be set aside unless it is found to be arbitrary or an abuse of discretion. See Ed & Jim Fleitz, Inc., 50 T.C. 384, 390. However, under the facts of this case it cannot be said that the respondent's determination of discrimination was arbitrary when the following facts are taken into account. Out of 25 regular employees employed for all or most of the 12 months, only three were covered by petitioner's plan for its salaried employees, and of those three employees, two were in the prohibited group, i.e., two were officers, shareholders, and highly paid individuals in comparison with the regular, hourly-paid employees. In the Fleitz case, supra, pp. 389-391, we stated the following: We agree with respondent. The law permits the salaried-only classification but the committee reports make it clear that the classification is not to be used if its effect is to discriminate in favor of the prohibited group. The fact that petitioner's business needs *103 are such that it needs no more than three nonunion salaried employees, plus a permanent work force of union laborers, is of little consequence and certainly is not conclusive. The plain meaning of the statute is that a classication which is limited to salaried employees might or might not be discriminatory, depending upon who the salaried employees are. If the salaried employees and the prohibited group are the same then it seems quite likely that the plan in operation would be considered discriminatory in favor of the prohibited group. When the salaried employees group includes the prohibited group, plus one or two other salaried employees, discrimination in favor of the prohibited group might still result. Rev. Rul. 66-14, 1966-1 C.B. 75. When the salaried employees group includes the prohibited group and many more employees it might well be that no discrimination exists. See Ryan School Retirement Trust, 24 T.C. 127, where there were 110 rank and file employees and 5 officers eligible to participate. * * * There is some suggestion in petitioner's brief that its classification should have been approved because of the language of section 401(a)(5) where *104 it is stated: A classification shall not be considered discriminatory within the meaning of paragraph (3)(B) or (4) * * * merely because it is limited to salaried or clerical employees. * * * All that this statute means is that a salaried-only classification will not be considered discriminatory per se. The quoted statute does not render such a classification nondiscriminatory. The plan must meet the requirement that there be no discrimination in coverage in favor of the prohibited group even though the salaried-only classification is used. * * * In the case of Duguid & Sons, Inc. v. United States ( N.D.N.Y. 1967, 20 A.F.T.R. 2d 5725), the court had the same issue as is present here with much the same fact situation. There the coverage in a construction company's plan was restricted to "any person regularly employed * * * in an executive, administrative or clerical capacity." In effect, the classification resulted in covering the taxpayer's two officers and its one supervisor out of a permanent work force of around nine employees. In holding the Commissioner's determination that the plan was discriminatory was not arbitrary or an abuse of discretion, the court stated: *105 The hard, cold facts involved here are undisputed, and I so find them, that the three employees covered by the plan were the two owners and managers of the Company and its one Supervisor. It is true, as the government concedes, that by the statute and regulations a plan may cover salaried employees only, and there is no requirement to cover the entire labor force, but in this setting there is sufficient, I think, to base adverse decision upon the portion of the statute that bars approval if the plan favors officers, shareholders and persons whose principal duties consist in supervising the work of other employees, or are highly compensated employees. * * * We hold the Commissioner's determination, that the trust was discriminatory in operation in favor of the prohibited group set forth in section 401(a)(3)(B), 1035 is not shown to be arbitrary or an abuse of discretion on his part. We conclude that the trust was not qualified under section 401(a) or exempt from tax under section 501(a). Consequently, petitioners' contributions to the trust were not deductible under section 404(a)(3). See Armanco Productions, Inc., 49 T.C. 174 (1967). * * * The above quoted reasoning *106 of this Court in the Fleitz case, supra, applies with equal force to the instant case, and the same conclusion and holding are made under the facts of this case. Section 401(a)(5) provides in pertinent part that a classification shall not be considered discriminatory within the meaning of section 401(a)(3)(B) merely because it is limited to salaried or clerical employees. Section 401(a)(5) sets out certain classifications of employees which will not in themselves be considered discriminatory. But that section does not stand alone and it must be considered in conjunction with section 401(a)(3)(B). See secs. 1.401-3(d) and (e) of the Income Tax Regs. This position, one of long standing, originated in the Revenue Act of 1942, which inserted paragraph 5 into section 165(a) of the 1939 Code. See sec. 401(a)(5), 1954 Code, the corresponding provision. See S. Rept. No. 1631, 77th Cong., 2d Sess., 1942-2 C.B. 504, 606. See also Rev. Rul. 66-13 and 66-14, 1966-1 C.B. 73 and 75. Congress enacted the provisions of section 401 (a)(4) "In order to insure that stock bonuses, pension, or profit-sharing plans are operated for the welfare of employees in general, and *107 to prevent the trust device from being used for the benefit of the shareholders, officials, or highly paid employees." H. Rept. No. 2333, 77th Cong., 2d Sess., 1942-2 C.B. 372, 450. Petitioner's profit-sharing plan covers its two shareholders who are its president, and vice president and secretary. Each one is highly paid, $35,000 a year, in comparison with the average annual wages paid to the hourly-paid employees. The profit-sharing plan also covers one other employee, Julia, whose rate of annual salary was $4,925. But the inclusion of that one employee whose annual salary was commensurate with the annual wages of several of the hourly-paid employees does not help petitioner under all of the facts. It is concluded that the petitioner has failed to establish an absence of discrimination under its profit-sharing plan, and has failed to establish that the Commissioner's determination was arbitrary or an abuse of discretion. It is held that the respondent's determination was not arbitrary or an abuse of discretion; that the profit-sharing trust is not qualified under section 401(a), or exempt from tax under section 501(a); and that petitioner's contributions to the trust *108 are not deductible under section 404(a) (3). Respondent's determination is sustained. We do not reach a second question in this case, due to our holding under the main question, about the amount of petitioner's contributions to the plan, which would be deductible if the plan were held to be a qualified plan, $11,238.75, or $10,955.25. We need not consider that question. Decision will be entered for the respondent.